Good morning. I'm Kirby Heller. I represent the United States. I'd like to reserve three minutes for rebuttal. Just watch the clock, Counsel. The Supreme Court decision last spring in Dillon v. United States resolved the only issue that was raised in the government's appeal. That was whether Booker applies to sentence modification proceedings under Section 3582 C.2. The Supreme Court overruled this Court's decision in United States v. Hicks and held that the limitations in sentencing guidelines Section 1B 1.10 are mandatory. Mr. Fox now seeks this Court's review on the separate claim that Section 1B 1.10 was improperly promulgated. As an initial matter and as a prudential matter, this Court could decline to reach this issue at all. It wasn't raised in the district court. It wasn't raised before the panel. And the Supreme Court, when it asked for supplemental briefing in this case, which is when the issue was first raised, asked for supplemental briefing solely on the issue whether the Court should overrule Hicks. Of course, to the extent that Mr. Fox was relying upon our decision in Hicks at the time that he was resentenced, that decision would have been controlling, would it not? Yes. Yes. So how can we fault Mr. McCoy for not raising the argument when he had a Ninth Circuit case that was directly on point supporting his position? Well, that's correct. But then when he did raise it, and when he raised it, we believe that it was really too late. The issue was whether Hicks should be overruled, and that was why the government sought both sort of panel decision on the matter if the Court were to determine that the statement in Hicks was dicta or a petition for initial petition, a petition for initial hearing in bank on whether the Court should overrule it. And so the Court, it had a funny kind of history. First the panel had it, then the Court decided it would accept the government's petition and ask for supplemental briefing on what we thought was this narrow issue. Well, let's just assume that the issue has not been waived and that we get to the 1B1.10. Yes. Why shouldn't it apply? Why shouldn't – I'm sorry, Your Honor, why shouldn't – We think 1B1.10 should apply, and we think it was properly promulgated. All right. And we think that's why we think Dillon, in fact, has resolved the issue, the primary issue in this case. This is the separate claim, I believe, is premised on the idea that 1B1.10 should be a guideline and not a policy statement. And if it were a guideline, then it should have been subject to notice and comment under the APA. Now, of course, Mr. McCoy can make his argument if that's how I read it. There was notice and comment rulemaking to some extent, was there not, with regard to whether or not the Commission should recognize the difference between crack and powder cocaine. Yes, there was, Your Honor. First of all, there was. Was it required to do so, because it's a policy statement, and Section 994X makes clear that notice and comment is only required for guidelines. But the Commission went a step further here because of the importance of the issue. So they did ask for – they tried to notice and said we would like comments, along with whether these crack guidelines should be retroactive, whether the procedures in 1B1.10 should, in fact, be modified. And they got a lot of comments on it. Well, wasn't the Commission also asking if we're going to recognize, or let's say adjust the major difference between crack versus powder, at what level should we set the adjustment? That was also part of the notice and comment rulemaking, was it not? I don't recall, Your Honor. I do know at the second step, I believe the question was whether it should be retroactive. I believe there were at least two different notices. But the Commission was wrestling with, well, if we're going to recognize a distinction, how many levels are we going to adjust, right? And ultimately they came down with two. That's correct, Your Honor. And then there was this separate issue. Right. And I'll chat with Mr. McCoy about this when he gets up. But as I understand his argument, the notice and comment rulemaking is incomplete because the public was never given the Commission's final policy statement on the issue to comment upon, and therefore it's deficient. Right. And, again, our position, of course, is that they weren't required to do it at all. To do it at all, right. But, you know, to the extent they did it, I believe, in fact, there was both sufficient notice and that the final rule was the logical outgrowth of the notice and the comments. After all, it was, you know, how should we modify these procedures? The comments, including the Federal Defender Service, came back and said, you know, if you don't really need to modify it, if you do modify it, you should make clear that the court has a lot of discretion. Basically it was going to incorporating Hicks within any modifications, that we're not going to limit what the court can do. So I believe the parties that were concerned, including the Criminal Law Committee, and the other groups, understood precisely what was at issue. And, again, this question is difficult. We still come back to the fundamental question, and that is, is this a resentencing, or is it an adjustment? As I look at 1.1B10, B1, in making such a determination, the court shall substitute only the amendments listed in subsection C for the corresponding guideline provisions and shall leave all other guideline application decisions unaffected. Does that give you, give us authority to resentence? Or give the trial judge authority to resentence? Not resentence. Dillon has really settled that issue. I mean, Dillon has settled that the only thing the court can do in these 3582C2 proceedings is to first decide, of course, whether the defendant is affected by the retroactive amendment. And here, of course, Mr. Fox is. And then to decide what this reduction should be within the limits set by 1B1.10, which are mandatory. And here, all the court can do is substitute this reduction by two levels in the guidelines, which would result in a sentence no greater than 292 months in Mr. Fox's case. There isn't even a requirement that the defendant be present when that happens, is that right? That's correct. So this is all done in chambers as opposed to a full resentencing in the courtroom. Absolutely. And Dillon, again, has laid to rest any of those open issues. But even this Court in Hicks acknowledged that the defendant didn't. Say, and I'm not saying we do, but say we agree that this is a guideline and not an application provision. So then we wouldn't apply it because it wasn't sent to Congress to be approved as guidelines must. But then what exists? What was in existence before? Well, that's an interesting question, Your Honor. And do we end up with the same result? I believe we do. And that's yet another reason why notice and comment wouldn't be required. Because if you look at the prior 1B1.10 that was in effect before these modifications were made, it really ends up with the same result. Now, I know that Hicks didn't see it that way. But when you look at how it was written beforehand, and the Sentencing Commission actually made this point, as it argued as amicus for Dillon, the prior version said, again, don't change the other guidelines, just substitute the new one. But it said something about the limits as well. And what it said was the amended guideline range, that is with the new guidelines, and the term of imprisonment already served by the defendant limit the extent to which an eligible defendant's sentence may be reduced. This is the prior version. That was in the application note, not actually in the policy statement. And so really the difference between the two versions is that the commission took things out of the application note, put it in the policy statement itself. And when it was explaining the amendment, the reasons for the amendment, what it said is we're clarifying the procedures. So it is our position that it would be the same, it should be the same result. And that's yet another reason why notice and comment wouldn't be required. Ideally what you want from us is an opinion declaring that Hicks is overruled by Dillon, remanding to the district court with directions to resentencing conformance with 1B1.10, and that will be the end of it. That is our position, and that the sentence cannot be any lower than the 292 months, which is the bottom of the amendment. Well, that's what 1B1.10 says, right? Yes, yes. Counsel, you have less than a minute left. Do you want to reserve? Oh, yes. I've reserved. Oh, I thought I have 41 seconds. Yes, you have. I think I have three minutes for rebuttal. No, no three minutes. No, three minutes. Sorry. I'll reserve 35 seconds. I'm sorry. And if I may mention to counsel in the audience, this clock counts down, and we have to rely on counsel to watch the clock. And if you want to reserve, you have ten minutes, you want to reserve three, you better stop at seven. I see. I misunderstood. You're not suggesting, though, that we send it back with the district court and then decide whether this is a guideline or a policy statement, correct? You're asking us to take care of that. Yes, Your Honor. Thank you, counsel. We'll hear from Mr. McCoy, Federal Defender. Good morning. May it please the Court. My name is Kevin McCoy, and I represent Mr. Fox here. The argument that Mr. Fox makes this morning was discussed by Justice Stevens in his dissent in Dillon. Justice Stevens concluded that Congress did not authorize the Sentencing Commission to promulgate the type of policy statement that you find in 1B1.10. Can I ask you something about that? Please. If you look at 28 U.S.C. 994A2, they talk about they define the powers of the commission, and one of the powers is to create general policy statements regarding application of the guidelines. And then one of the provisions is to deal with the retroactive set policy statements dealing with the retroactivity of the guidelines. And so the statute envisions that there are going to be policy statements, not guidelines, dealing with the retroactivity. And then the other statute that talks about the modification upon retroactivity says consistent with the policy statements. So doesn't that indicate to you that the congressional structure, the statutory structure was that when it comes to retroactivity, there would only be policy statements, not guidelines? It indicates it doesn't change what a policy statement can do. It doesn't change what a guideline can do. The power to determine whether a guideline should be retroactive and the extent and how much the reduction is in 994U. And it's our position that that power has to be exercised by a guideline and not by a policy statement. It's clear that the statute contemplates policy statements when you are talking about modifications of sentences, but that does not transform the policy statement into something that can do the work of a guideline. But the statute doesn't say that they can reduce the sentence retroactively consistent with guidelines and policy statements. It just says consistent with policy statements. It does. But that does not allow the policy statement to do the work of a guideline. There are procedural checks on guidelines. Guidelines were intended to be mandatory. The various procedural checks that you're aware of, you know, they have to be revised regularly. They have to be submitted for notice and comment. And then they have to be sent to Congress. And the reason it was contemplated that way was because the guidelines were intended to have a binding effect. I understand that, but why wouldn't Congress then have put guidelines in the statute that says that you can reduce the sentence retroactively consistent with the guidelines and the policy statements? 994A2 talks about what policy statements can address. It's 994U that empowers the Sentencing Commission to reduce the sentence, to retroactively reduce the guideline rates. But it doesn't know. I mean, I can read just like you can. It doesn't say guidelines, but it's what you're attempting to do here. And what you're attempting to do is bind the district court's discretion when he or she is asked to revise a sentence. Are there any other guidelines that you're aware of? Are there any guidelines that you're aware of that deal with adjusting sentences after they've been imposed? No. None comes to mind right now. But what I can do to illustrate the difference that I'm trying to make is if you look at Chapter 7 in the revocation guidelines, courts deal with those on a daily basis around the country. Tell me about it. Right. Literally on a daily basis. Unfortunately on a daily basis. But my point being is that if you look at Chapter 7, the commission is trying to decide should we issue policy statements or should we issue guidelines. And they decided that they didn't have enough experience to issue guidelines that would have been intended to bind the court. And so what they created is they elected to go with policy statements. And they said after a period of time, after we get experience, then we might promulgate guidelines. But what it recognizes is a difference between guidelines and policy statements. Guidelines were intended to be binding. Policy statements never were intended to be binding. But if they came up with guidelines in that area, it would be for adjudication of supervised release violations and new sentencing on the violation. Yes. Not post-sentence administration. Okay. All right. But what, yes, but what, in other words. But we have post-sentence administration in this situation. Yes, we do. Yes, we do. But what's happening here is when you have an initial sentencing, the court is using a guideline as direct to determine the appropriate length of a term of imprisonment. Commission acts, decides that, well, we were mistaken. The crack guidelines being the paradigmatic example. We were mistaken, so let's redo it. And so what happens is the sentencing judge is supposed to apply the revised range and determine the appropriate term of imprisonment under the new regime. If the commission wants to make it binding, it's got to use a guideline and not a policy statement is my position. Mr. McCoy, the only problem I'm having with your argument is that it essentially reads out of Title 18, Section 3582C, that makes it very clear that Congress intended that once a term of imprisonment has been imposed, the district court can't go back, with the exception of Rule 35 and 5K1.1, and modify that sentence. Correct. And yet, if we accept your argument, that would be a new exception to 3582C, notwithstanding the argument in 994, or the provisions in 994, and that's a hard opinion to write. Well, I guess I respectfully disagree. The reason that I do is that sentences can't be modified once they're imposed. This is the one way a sentence can be modified that's at issue here, which is, okay, the commission has determined that the original guideline was appropriate to amend that guideline and then apply it retroactively. By Mr. Fox's point. He's getting an amendment. Your argument is it's not going far enough. The only adjustment is the two levels, and you want a full resentencing. No, I don't want a full resentencing. That's what you argued before Judge Singleton. That's true. But what I'm saying now is that procedurally, if the commission wants to tell Judge Singleton that this is a new guideline range and you are not allowed to go below 292 months, they have to do that by a guideline with all the procedural checks in place so that people can comment on it. But how do you do that? But that seems to be inconsistent with what the Supreme Court told us in Dillon. All that Dillon did was take the Sixth Amendment out of it. It just said a reduction doesn't violate the Sixth Amendment. That's all Dillon said. Dillon didn't address the argument that we're making here, just as Stevens did. On a footnote, they said they weren't reaching it. That's right, because it wasn't presented. But our position is that it's presented here. Say you're right. So then where are we? We're back to the old policy statements. So aren't you still in the soup there? No, I don't think so, because the old policy statement, whatever it was, said consider the amended range and then decide what you're going to do. It didn't give a direction that said you could only go so many levels. But if we're stuck, because Booker isn't retroactive, if we're stuck with the mandatory guideline regime, in Mr. Fox's case we are, right? Because Booker wasn't retroactive. That's correct, yes, sir. So then you modify the guidelines based upon the retroactivity, and you're stuck with the mandatory scheme. Yes, but you are stuck with a mandatory scheme, except that to make that mandatory it has to be a guideline. The original scheme, the original scheme that he was sentenced under, was promulgated with all of these procedural checks, and everybody knew and had an opportunity to comment on it. Two questions. Sure. If you're right, then the provision in the rules that says that the defendant doesn't have to be present for this modification really would be inapplicable, because he'd always have to be present because he could make other arguments. He wouldn't always have to be present. I mean, in other words, you could make other arguments, but I mean I've had defendants who get resentenced who do not wish to be present. They don't want to be moved from where they are. They have no right to be present. Right, and they have no right to be, and it would be to the discretion of the individual district judge to decide whether he or she wanted him there. But if you're correct, they'd have a right to be present because then they can make these other arguments. Why would they have to be present to make those arguments? Mr. Fox wasn't present in this case when the arguments were made. Okay, my last question is this. If you're wrong and it goes back, does the district judge, and I'm thinking, say I got reversed and now it's back. Does the district judge then have, in your opinion, authority to depart for other reasons under the guidelines? And so, in other words, when you talk about you can only go to the low end of the guideline range, doesn't that take into account the departures that you could have made? Or is the district judge precluded from doing that because it's not a resentencing? Well, I think Dillon makes clear it's not a resentencing. So you're stuck. On the Sixth Amendment, on the Sixth Amendment issue. So the court could not consider his subsequent behavior in prison? Well, I think it could. Which, as I understand it, was exemplary. It was exemplary. I mean, this is a hard case. It is a hard case. This is a hard case. Mr. Fox is out on supervised release. He's doing well. And it's just one of the things we have to deal with. But I guess our position is, in any context, this context or any other context, if the commission wants to put an absolute limit on a judge's discretion in determining the appropriateness of the sentence, and now I understand the question a little better than when I answered it. Certainly, trying to be more responsive, I think what the district court judge would be deciding, is this a case where I want to go just to the limit, or is this one of those extraordinary cases which district courts are capable of dealing with and exercising discretion that we ought to invite the defendant to present this stuff? For example, in Mr. Fox's case, all of the arguments in the decision that was rendered in Mr. Fox's case was done in his absence. It doesn't require that he be there. No, but if you're right, if I were the sentencing judge, I don't mean to take Moskowitz's job away from him, day job away from him, but if I were in his position and your pitch was, look at how well my client has done since he's been in prison, I'd like to talk to Mr. Fox. You would also like to talk to Mr. Fox after you heard from the government as to what their position was, I think. In other words, I appreciate that, but we're not talking about how many retroactive amendments have we had, and we're not talking about a great deal of work, and certainly the district courts are capable of doing it. Except the concern I have goes back to 3582C, which is we have a pretty clear congressional directive that we sentence once, and with the one exception that we're talking about here, you don't get to be resentenced again, no matter how good you've been. But then the question becomes, and I'm out of time, but the question then becomes can the commission dictate a limit using a policy statement? Does it have to? Given the clear congressional directive, does the commission need to worry about that? Our position is that it does.  All right. Thank you, counsel. Thank you for your courtesy. Oh, very well. Good argument. Ms. Heller, you have less than a minute, so speak fast. Two points, really. The first is, again, the premise of the argument that this is a policy statement, a guideline masquerading as a policy statement, really isn't true. This is not acting as a guideline. It's not setting a specific offense level for a punishment for a specific crime. At bottom, that's the argument that was rejected in Dillon, that sentencing and sentence modification procedures are very different and that the commission can limit a grant of leniency. It's not the same thing as sentencing, and that's what this is, a grant of leniency. Well, you know, I mean, it's a great argument, but a guideline masked as a policy statement, it deals with the nature of the drug, which is a huge driver of the base offense level in all drug trafficking cases. And the question is, do we punish crack cocaine far more than we do powder cocaine? And that really is the heart of the guideline calculation. It's the most important question that the district court must examine in calculating the base offense level. Right, and that's in the guidelines. What is the appropriate punishment for dealing in crack cocaine? Now we're at the separate stage in the proceeding. It's final, and because the commission has grant, had said we're going to make this retroactive, under leniency that's provided to it by 3582C can give some leniency to this, but it's limited, and that's what Dillon said this is all about. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Moskowitz, O'scannlain, Tallman